# N. Y. SUPERIOR COURT.

## FRANCIS A. PALMER agt. JOHN FOLEY.

The clerks and officers in the bureau of the chamberlain of the city of New York, including the deputy chamberlain, were not intended by the legislature to be, and were not in fact, included within the power of appointment and dismissal which is conferred upon the comptroller by the 32d section of the charter of 1870; and it follows that the alleged appointment set up by the defendant in his answer to the office of deputy chamberlain, as his sole defense to the action, is invalid and void.

*January Special Term,* 1873.

THE comptroller of the city of New York, Andrew H. Green, Esq., claimed the right to appoint, under a provision of the charter of 1870, the deputy chamberlain, and the defendant Foley was so appointed by him. The plaintiff, as chamberlain, denied the right claimed by the comptroller, and brought an action, and moved for an injunction, to restrain defendant from interfering with the business of the chamberlain's office and from intruding himself into said office.

ABRAHAM R. LAWRENCE *and* JOHN W. EDMONDS, *for plaintiff.*

JOHN H. STRAHAN, R. W. TOWNSEND *and* A. R. DYETT, *for defendant.*

BARBOUR, *C. J.*—This is a motion for an injunction pending the litigation of an action. The complaint alleges substantially that the plaintiff is the chamberlain of the city of New York, and that in the exercise and performance of his duties and powers as such officer he did, on the 16th of May, 1872, appoint Walter B. Palmer to the office of deputy

chamberlain of the city, and that the latter has ever since been, and now is, exercising and performing the duties of such office; that on the 6th of January, instant, the defendant intruded upon and attempted to take possession of the office of the deputy chamberlain, claiming from the plaintiff the right to be received and recognized as such deputy, and upon the plaintiff's refusing so to recognize and receive him, then gave notice and proclaimed that he intended, at all events, to exercise the duties and powers of the office of deputy chamberlain.

The plaintiff further avers that there is annually paid into his hands, as city chamberlain and county treasurer at least $50,000,000, several millions of which are constantly in his hands, and that it is his official duty to carefully preserve, safely keep, and disburse the same according to law, and that the intrusion of the defendant into the said office and his continued persistence in exercising the powers of a deputy chamberlain are calculated to produce great confusion in the city and county treasuries, to hazard the safe keeping, &c., of the public moneys, and to increase the responsibil ty of the plaintiff. The complainant, therefore, prays that the de endant may be restrained from intruding into the said office, or exercising any of the functions of the office of deputy chamberlain, and for general and f rther relief, and also asks for an interlocutory injunction restraining the defendant as aforesaid *pendente lite*. None of those alle a ions are denied in the answer except the averments touching the appointment, &c., of Walter B. Palmer as deputy chamberlain, which are denied; and the defendant avers that he was, on the 6th of January, current, duly apnointed by the comptroller of the city to the office of deputy chamberlain, and, thereupon, took the oath of office, furnished the security required by law, and entered upon and has since exercised some of the powers and duties of such office.

The defendant also claims in his answer that Walter B. Palmer, the mayor, aldermen, and commonalty of the city

of New York, and the people of the state, are necessary to the action. The objection taken at the hearing to the jurisdiction of the court upon the ground that the action was brought to determine the title to an office cannot be sustained. It is true the complaint alleges that Walter B. Palmer has been duly appointed, and is, in fact, the deputy chamberlain, and that the defendant is not, although he claims to be such officer. But it does not ask the court to determine the conflicting claims of Walter B. Palmer, but only that the plaintiff may be protected in the performance of the duties and obligations imposed upon him by law, by means of an injunction against such an actual and threatened intrusion and interference by the defendant, under color of an alleged appointment as deputy chamberlain, with the records and papers in the chamberlain's office, and with the public funds in the plaintiff's hands, as may work a material injury to him personally. Nor will it be necessary for the court to determine or even to consider, either upon this motion, or at the final hearing in the action, whether Walter B. Palmer is, or is not, the deputy chamberlain, except possibly in so far as such fact may be useful as inferential evidence.

Indeed the allegation in the complaint touching the appointment of Walter Palmer appears to be merely the assertion of a collateral fact, which in no manner affects the personal rights of the plaintiff to the relief he seeks, and it might therefore be wholly stricken from the bill as surplusage or immaterial matter without injury to his claim. The right of the plaintiff to an injunction is not to any extent founded upon those allegations. The question whether the defendant is really the deputy chamberlain or not is of course a very important one in the controversy, as it constitutes the sole ground of his defense by way of justification. But it is the defendant and not the plaintiff who has raised the question by his pleading, and for that reason it cannot properly be claimed by him, who has thus pleaded the fact in

his answer, that the action is brought or maintained by the plaintiff for the purpose of establishing or determining the title to an office. So, too, as to the point made by the defendant in his answer and by his counsel at bar, that Walter B. Palmer, the mayor, &c., of the city, and the people of the state are necessary parties to the action. It is the personal action of the plaintiff as an individual, and it can be maintained upon no other theory than that he is entitled, upon the facts set forth in the complaint, to relief by way of injunction as a matter of private and personal right. Neither of these persons, therefore, can be deemed a necessary party to the action for any purpose.

As the allegations of the complaint to the effect that fifty millions of public moneys annually pass through the plaintiff's hands, that several millions are constantly there, that it it is his duty to carefully preserve and safely keep the same, and that the acts of the defendant which are complained of are calculated to produce confusion in the treasuries, hazard the safe keeping of the moneys, and increase the responsibility of the plaintiff, are wholly uncontroverted on the part of the defendant, those averments must be taken to be true. An examination of the statutes read at the hearing also shows that the city chamberlain is, in fact, the treasurer of the corporation, as the name imports, and as such chamberlain is, *ex-officio*, the treasurer of the county, and the custodian of the moneys derived from taxation in the county of New York and belonging to the state, as well as the custodian of such moneys belonging to estates, trusts, litigants, &c., as are directed by the courts to be deposited with him; that some, or all of those moneys, are deposited by the chamberlain, or upon his direction, in certain banks designated by him by written notice to the comptroller, and are withdrawn therefrom by him for the purpose of making such payments as he is from time to time duly and legally required to make; that it is his duty not only to look carefully to the safety of those moneys, but to see that no money is paid out in excess

of the proper appropriation therefor, even though he may be required to do so by the warrant or requisition of the comptroller, countersigned by the mayor; that books containing accounts of all receipts, payments, as transfers by him, with the vouchers therefor, are kept in his office; and that by law a deputy chamberlain may be appointed, who shall have, and in the chamberlain's absence may exercise, all the powers so conferred upon the chamberlain.

In view of all this, it is easy to see that if the plaintiff shall, either wilfully or negligently, permit the moneys in the treasuries to be withdrawn therefrom by any one except himself, or by a properly appointed and duly qualified deputy chamberlain, he will be personally liable for any loss the city, county, state, or other party for whom he holds moneys may sustain thereby; and it follows that the plaintiff has such a personal and pecuniary interest in the subject-matter of the action and in its results as entitles him to prosecute and maintain the same. It is equally clear, too, that unless the defendant has established the fact upon the hearing here, that he is in fact and in law the deputy chamberlain of the city, the plaintiff is entitled to the injunction he asks for. That question, therefore, must now be considered.

In April, 1866, an act was passed by the legislature which authorized the city chamberlain to appoint a deputy, fix his salary, and dismiss him at pleasure (*Laws of* 1866, *ch.* 623). The first paragraph of the thirty-second section of the charter of 1870 provides that "the heads of all departments * * * shall have power to appoint and remove all chiefs of bureaus (except the chamberlain), as also all clerks, officers, employes, and subordinates in their respective departments." The comptroller was then the head of the finance department, in which there was and for many years has been "a bureau for the reception of all moneys paid into the treasury of the city, and for the payment of money on warrants drawn by the comptroller and countersigned by the mayor," the chief officer of which was the

chamberlain (*Laws of* 1870, *p.* 375, *ch.* 37, *sec.* 7). That statute does not in terms repeal the act of 1866, although it does directly and specifically repeal a number of other acts; but it contains this general repealing clause: "All acts inconsistent with the provisions of this act are also hereby repealed" (*Ib. sec,* 120).

There can be no doubt that the act of 1866, which gives to th chamberlain the power of appointing, and removing his own deputy and clerks is wholly inconsistent with the first paragraph of the thirty-second section of the statute of 1870, above cited, if that paragraph was intended by the legislature to confer the power of appointing and removing the same officers upon the comptroller. The language of the paragraph in question, when read by itself and not in connection with the other part of the section, and regardless of the probable design and intention of the legislature, is sufficient to give to the comptroller the power of appointing and removing the officers and clerks in the chamberlain's bureau, including the deputy chamberlain. But that power cannot be held to have been in fact conferred upon the comptroller, if upon an examination of the entire act of 1870 in connection with former enactments in *par materia*, and the surrounding circumstances as shown by the evidence before the court, it clearly appears that the legislature did not intend to grant such power to him (*See Dwarris on Stat.,* 530 *and Seg.* 1 *Burrows,* 447; *Dresser* agt. *Brooks* 3 *Barb.,* 429; *McCarter* agt. *Orphan Asylum* 9 *Cowen,* 437; *Goldson* agt. *Bucks,* 15 *East.,* 377; *Williams* agt. *Pritchard,* 4 *Term R. Q.;* 1 *Kent's Com.,* 462). The legislation in this state in relation to local government and management of counties, towns, cities, and villages, from the earliest period in its history down to the enactment of the so-called charter of this city in 1870, shows that it has always been a fundamental principle in the policy of the state government that the various treasurers or custodians of the public moneys should be placed beyond the control and power of those

officers who were charged with the duty of auditing claims and directing the payment thereof, in so far, at least, as concerned the custody and safe keeping of such funds.

Indeed, in the limited time which my official engagements have permitted me to devote to the examination of the numerous statutes upon the subject, I have been unable to find a single instance during all that time in which any person or persons charged with the duty of auditing claims against counties, towns, or municipalities, have been empowered by law to appoint the treasurers thereof except for short periods in cases of vacancy occasioned by death, resignation, &c. In view of that long-preserved and well-established course of legislation it is more reasonable to believe that the failure to insert an exception of the deputy chamberlain in the first paragraph of the thirty-second section of the charter, was the result of some accident or mere clerical omission, than that it was so designed and intended to be by the legislature. The fact, too, that while the power of appointing and removing all the other heads of bureaus in the finance department, except the chamberlain, was given to the comptroller, the latter officer was especially excepted from the provision, as he always has been, still further strengthens the presumption that the legislature did not design to confer upon the comptroller the power of appointing or removing the deputy chamberlain. For as the deputy was vested by law with all the powers of the chamberlain himself, and was authorized to exercise the same to the fullest extent in the absence of the principal, there was certainly as strong and the same reason for placing the power of appointing and removing the custodian of the public moneys, beyond the reach of the comptroller in the one case as in the other.

The principle of thus separating treasurers from the accounting officers was probably adopted, and has been long adhered to in order to guard against collusion between those two classes of officers, while clearly the power of appointing and removing the deputy chamberlain might enable a

dishonest comptroller, at some future term, to rob the treasury of millions by means of his own appointment. But beyond all that the act of 1866 not only authorized the chamberlain to appoint his own deputy and clerks and to fix their salaries, but it directed that the salaries of all those officers, as well as the rest of the chamberlain's office, should be paid by the banks which were the depositories of the public moneys, and that act was not only in full force at the time the act of 1870 was passed, but so much of it, at least, as relates to the payment of the salaries, and office rent was wholly unaffected by the latter act, and, indeed, it is understood as now an existing law. The thirty-second section of the act of 1870 reads as follows: "Sec. 32. The heads of all departments, except as otherwise specifically directed herein, shall have power to appoint and remove all chiefs of bureaus (except the chamberlain), as also all clerks, officers, employes, and subordinates. The number of all officers, clerks, employes, and subordinates in every department (except in the police and fire departments), with their respective salaries and compensations, shall be such as the head of each department shall designate and approve, except that the aggregate expense thereof shall not exceed the total amount duly appropriated by law to each department for such purposes."

It will, thus, be seen, that while the first paragraph of this section makes no provision in regard to the salaries of the officers and clerks, who are there authorized to be appointed by the heads of departments, the second aragraph, in so far as concerns the department of finance, groups the whole of such appointees together, including as well the cle ks and officers in the office of the chamberlain, whose salaries were to be paid by the banks under the act of 1866, as those whose salaries were chargeable upon the city treasury, and makes a provision in regard to the aggregate expense of all those officers, clerks, &c., with reference to the appropriation therefor, which is quite inconsistent with

the theory that the officers, clerks, &c., wh se salaries were to be paid by the banks were intended by the legislature to be included among those whom the comptroller was authorized to appoint.

For these reasons, I am of opinion that the clerks and officers in the bureau of the chamberlain were not intended by the legislature to be, and were not, in fact, included within the power of appointment and dismissal which is conferred upon the comptroller by the thirty-second section of the charter of 1870 ; and it follows that the alleged appointment set up by the defendant in his answer as his sole defense to the action, is invalid and void. The plaintiff's motion for an injunction pending the controversy, must, therefore, be granted with costs, to abide the event of the action.